UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EUNICE GORDON, on
behalf of the Estate of
RAYMOND O'NEIL                          Case No. 2:16-cv-11239
GORDON, SR., and EUNICE                 District Judge Sean F. Cox
GORDON, Individually,                   Magistrate Judge Anthony P. Patti

       Plaintiff,

v.

CHRYSLER GROUP, LLC
FCA US LLC-UAW
PENSION PLAN, an
employee benefit plan,

       Defendant.
_____/

## REPORT AND RECOMMENDATION

**I.    RECOMMENDATION**:  The Court should **GRANT** Defendant's motion

for judgment on the administrative record (DE 17) and **DENY** Plaintiff's motion

for judgment on the administrative record (DE 19).

**II.   REPORT:**

### A.    Background and Pending Motions

On April 5, 2016, Eunice Gordon filed the instant lawsuit for surviving

spouse benefits under Defendant's pension plan, in which Plaintiff delineates the

following causes of action:  **(I)** violation of the Employee Retirement Income

Security Act of 1974 (ERISA) and wrongful denial of full surviving spouse benefits, and **(II)** declaratory judgment.  The second count is, essentially, a mislabeled prayer for relief, in addition to which Plaintiff's "demand for relief" seeks "costs, interest, [and] attorney fees . . . ."  (DE 1 ¶¶ 28-32; *see also* DE 1 ¶ 8 (citing 28 U.S.C. § 2201 ("Creation of remedy")).)  *See Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950) (operation of Declaratory Judgment Act "'is procedural only.'") (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937)); *see also* 12 *Moore's Federal Practice*, § 57.04[1] (Matthew Bender 3d Ed.).  It is a tool which "enable[s] litigants to narrow the issues, speed the decision, and settle the controversy . . . " expeditiously.  12 *Moore's*, § 57.03[2] (citations omitted).

Defendant answered the complaint on October 13, 2016, denying any liability and seeking an award of costs, including attorney fees.  (DE 8.)  The parties have filed cross motions for judgment on the administrative record, and Defendant has filed a timely response.  (DEs 17, 19, 20, 22.)  Judge Cox has referred these motions to me for a report and recommendation.

### B.    Standard of Review

The first issue requiring the Court's attention is the parties' dispute over the proper standard of review.  Defendant argues that the Court should apply the "deferential arbitrary and capricious" standard of review, while Plaintiff advocates

that her claim for "equitable relief" should be assessed under the *de novo* standard

of review.  (DE 19 at 11-13.)

Defendant disagrees with the characterization of the complaint as seeking

equitable relief.  (DE 22 at 15.)  Plaintiff's sole cause of action is titled, "violation

of ERISA and wrongful denial of full surviving spouse benefits."  Also, while

some of the underlying paragraphs use terms such as "promises" and

"representations," the essence of Plaintiff's claim is an alleged improper denial of

"full surviving spouse benefits," namely:

> Upon the death of Raymond Gordon, his surviving spouse Eunice
> Gordon requested said benefits from Defendant stating that she was
> *entitled* to surviving spouse benefits in accordance with the
> representations had been made to her by Defendants.

> Plaintiffs were thereafter notified by the pension plan board of
> administration that Eunice Gordon's claim for full surviving spouse
> benefits in accordance with promises made to her by agents and
> representatives of the pension board, interest on unpaid benefits
> commencing back to the date of her claim (well over one year), as
> well attorney fees and a full accounting of her *entitlement* of benefits
> was denied.

(*See* DE 1 ¶¶ 22, 23, 27 (emphases added).)  Thus, in title and in substance, Count

I asserts Plaintiff's entitlement to surviving spouse benefits under the pension plan.

(*See also* DE 1 ¶¶ 19, 20, 24.)

Moreover, as noted above, Count II seeks a "declaratory judgment[,]"

although this is a distinct legal remedy from injunctive (or equitable) relief, as it

requires a "lesser showing than injunctive relief[.]"  12 *Moore's*, § 57.07; *see also*

3

*Remedy: Equitable Remedy,* Black's Law Dictionary (10th ed. 2014) at 1485

(including injunction among equitable remedies).  *See also Steffel v. Thompson*,

415 U.S. 452, 466, 471 (1974) (Congress intended the Declaratory Judgment Act

"to act as an alternative to the strong medicine of the injunction . . . " and "to make

declaratory relief available in cases where an injunction would be inappropriate.").

In sum, and as Plaintiff generally asserts, she "seeks a *declaration of her rights* and

*entitlement to surviving spouse benefits* under Defendant's pension plan as the

surviving spouse."  (DE 1 ¶ 16 (emphases added).)[1]

It seems that Plaintiff's sole cause of action is based upon 29 U.S.C.

1132(a)(1)(B).  (DE 1 ¶¶ 7, 24.)  "[A] denial of benefits challenged under §

1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan

gives the administrator or fiduciary discretionary authority to determine eligibility

for benefits or to construe the terms of the plan."  *Firestone Tire & Rubber Co. v.

Bruch*, 489 U.S. 101, 115 (1989).  Plaintiff acknowledges this.  (DE 19 at 11.)  "If

a plan affords such discretion to an administrator or fiduciary, we review the denial

of benefits only to determine if it was 'arbitrary and capricious,' . . . and will

uphold his decision if it is 'rational in light of the plan's provisions,' . . . ."  *Marks

v. Newcourt Credit Grp., Inc.*, 342 F.3d 444, 456-457 (6th Cir. 2003) (internal

citations omitted).

---

[1] This conclusion is unchanged by Plaintiff's jurisdictional citation to 29 U.S.C. §
1132(a)(3) – one subsection of which concerns equitable relief.  (*See* DE 1 ¶ 7.)

As each of the parties points out, the plan at issue in this case expressly

provides:

> The Board of Administration shall have *discretionary* authority to interpret the Plan and determine eligibility for and the amount of benefits in accordance with the terms of this Pension Plan.  Any Board interpretation or Board determination shall be given full force and effect unless it can be shown that the interpretation or determination is *arbitrary and capricious*.

(R. at 167 ¶ C (emphases added).)  In fact, Plaintiff admits:  "since the Plan

documents grant discretionary authority to the Plan Fiduciary, it would appear that

the Standard of Review is 'arbitrary and capricious'."  (DE 19 at 12.)  Thus, the

parties agree that the pension plan at issue in this case provides for the requisite

"discretionary authority" and that the "arbitrary and capricious" standard of review

applies to Plaintiff's statutory ERISA claim.  (DE 17 at 21-22.)[2]

## C.    Discussion

### 1.    Pension Agreement & Summary Plan Description

The "Pension Agreement between FCA US LLC and the UAW" at issue in

this case became effective on January 1, 2014.  (R. at 111-237.)  In particular,

Plaintiff's lawsuit concerns the provisions of the agreement that relate to

"surviving spouse benefits," which includes, among other things, terms related to

---

[2] This may well be an academic discussion.  For the reasons stated below, it is unlikely that Plaintiff would be entitled to relief even under the *de novo* standard of review.

"the regular surviving spouse option," and "widow's/widower's pension benefit."
(R. at 135-143; *see also* DE 17 at 18-20.)

Also relevant to this case is the Pension Plan's "Summary Plan Description 2008." (R. at 239-299.) Like the Pension Agreement, the SPD contains provisions related to "survivor benefits," although it is divided into two options with different nomenclature: (A) "if you die before benefit payments begin," and (B) "if you die after benefit payments begin." (R. at 259-264.)

### 2.      Communications at Issue

Raymond O. Gordon, Sr. died on April 13, 2013, at the age of 64. (R. at 11, 33, 57, 69, 76, 98; DE 1 ¶¶ 12-13.) On or about May 16, 2013, Eunice Gordon submitted her husband's death certificate, apparently along with a "certified copy of marriage record," to Benefit Express. (R. at 96-99.) This set in motion the following chain of communication:

- On May 17, 2013, Plaintiff was informed by Benefit Express, a pension plan service provider, that she was entitled to a monthly benefit of $2,306.99 beginning on April 11, 2014 (in other words, what would have been her husband's 65th birthday), but could instead elect to receive a benefit of $1,499.54 beginning May 1, 2013 (*in other words, the benefit commencement date (BCD)*). (R. at 5-7, 40-41, 82-83, 93-95; *see also* R. at 107, DE 17 at 13.) <u>Defendant claims this letter was inaccurate in multiple respects</u>. (DE 17 at 14.)

- On March 25, 2014, Benefit Express informed Plaintiff that she was entitled to a monthly benefit of $2,319.20 beginning on April 11, 2014, but could instead elect to receive a benefit of $1,507.48 beginning April 1, 2014. (R. at 8-10, 42-43, 84-85, 90-92.)

6

<u>Defendant claims this letter contained inaccurate information</u>.  (DE 17 at 14-15.)

- On April 1, 2014, Plaintiff was informed that she was entitled to a monthly benefit of $1,499.54, beginning on April 1, 2014.  (R. at 14-16, 87-89.)

- On April 10, 2014, Plaintiff was informed that she was entitled to a monthly benefit of $1,499.54, beginning on May 1, 2014 (apparently, what would have been her husband's "normal" retirement date).  (R. at 18-27.)  The "normal" retirement date, as compared with "early" retirement, is defined as "the first day of the month after you reach age 65."  (R. at 250-254; *see also* R. at 129-133.)

- On July 1, 2014, Plaintiff was informed that she was entitled to a monthly benefit of $1,499.54 beginning on May 1, 2013, "based on the payment option RAYMOND O GORDON could have selected at retirement."  (R. at 28-30.)  <u>Defendant contends this letter's information was accurate</u>.  (DE 17 at 15.)  As same-day comments from Steve Jackson indicate:  "After review of the previously mailed PCS [*which this report assumes stands for a Pension Election Confirmation Statement*][,] I cannot explain why the PCS was sent out with the wrong amount allocated to the Survivor.  I can agree that the PCS attached does contain the correct amount."  (R. at 31, 107.)

The following month, Plaintiff wrote a letter to appeal.  (R. at 33-38.)  On December 24, 2014, the Benefits Express Determination Review Team denied the request "to receive additional survivor pension."  Among other things, this letter explained:

> The SPD [Summary Plan Description] states that a Qualifying Surviving Spouse Option will pay a surviving spouse a benefit equaling 65% of the deceased employee's benefit that was payable at the time of employee's death.

Under the formula provided in the SPD and based on Mr. Gordon's employment history, Mr. Gordon was eligible for a benefit of $2,306.99 at the time of his death. Therefore, you were eligible to receive a monthly benefit of $1,499.54, which is 65% of Mr. Gordon's $2,306.99 benefit.

On August 1, 2014, you began receiving your benefit based on a May 1, 2013 commencement date. As such, you received $23,992.64, which included 16 payments of $1,499.54 from your commencement date through August 1, 2014.

(R. at 53-54, 74-75.)  In her dispositive motion, Plaintiff acknowledges that May 1, 2013 is the date on which she became "eligible to commence receiving surviving spousal benefits . . . ."  (DE 19 at 13 (citing R. at 31, 107); *see also* DE 19 at 18.)

Plaintiff retained counsel to appeal the denial of pension benefits.  (R. at 55, 67.)  On April 24, 2015, the FCA US LLC-UAW Pension Board of Administration provided the following analysis:

The original decision to continue Ms. Gordon's monthly pension benefit, in the amount of $1,499.54 will stand.  It is important to note, that due to Mr. Gordon's age at death, he was already entitled to an unreduced pension benefit, and there would have been no increase in Ms. Gordon's benefit amount had she decided to delay commencement until May 1, 2014.  While we understand that Ms. Gordon was told on more than one occasion an incorrect benefit amount, we are legally bound to pay benefits in accordance with the document that governs the Plan, and pay the correct benefit amount that was communicated to her in April 2014, in the amount of $1,499.54.

(R. at 109-110.)

> 3.     **Whether the Board of Administration's April 24, 2015 determination was arbitrary and capricious?**

8

Under the terms of the "Widow's/Widower's Pension Benefit," Eunice Gordon was eligible to receive "65% of the reduced monthly basic pension that was or would have been payable after age 62 and one month to the retired employee," or, in other words, "65% of the basic pension benefit you would have been eligible to receive at age 62 and one month – reduced to reflect the surviving spouse adjustment factor." (R. at 137 ¶ 9(a)(5), R. at 139 ¶ 9(B)(ii), R. at 260.) As the SPD goes on to explain: "The benefit amount is based on the basic pension rate in effect at the time of your death and is calculated as if you had voluntarily retired on the date of your death and had elected a Surviving Spouse option." (R. at 260.)

Plaintiff contends that she "was in no position to know how the calculations were being made and/or whether she was required to delay the commencement of benefits . . . ." (DE 19 at 14; *see also* DE 19 at 17.) Stated otherwise, Plaintiff argues that she "had no reason to doubt the representations made to her that she needed to wait one year to receive benefits, or that the amount of $2,306.99 was incorrect." (DE 19 at 18.) Still, the parties now agree that Raymond Gordon was eligible to receive a monthly pension benefit in the amount of $2,306.99 had he retired on April 13, 2013, the date of his death. (DE 17 at 9 ¶ 3, DE 19 at 6 ¶ 1.) Sixty-five (65) percent of $2,306.99 is $1,499.54. As such, the Court should agree

with Defendant and conclude that the Board of Administration's April 24, 2015

determination "was neither arbitrary nor capricious."  (DE 17 at 22-23.)

### 4.    Whether Benefit Express's letters can alter the terms of the Pension Plan?

As noted above, Plaintiff filed the instant lawsuit on April 5, 2016 to recover

"full surviving spouse benefits," presumably a monthly benefit of $2,306 instead of

$1,499.  Her May 18, 2017 motion for summary judgment argues that "Defendant

is estopped from denying Plaintiff Gordon monthly benefits in the amount of

$2,306.[9]9 based upon the doctrine of equitable estoppel."  (DE 19 at 13-18.)[3]

The Court should deny Plaintiff's motion.  As discussed above in further

detail, Plaintiff's complaint does not present a claim for equitable relief.  True,

Plaintiff's motion asserts that she relied to her detriment upon misrepresentations

contained within Defendant's May 17, 2013 and March 25, 2014 letters (R. at 5-

10) and within oral conversations (perhaps including one dated April 1, 2014 (R. at

11)).  (DE 19 at 14-19.)[4]  However, the sole cause of action asserted in Plaintiff's

complaint is not a corresponding, equitable cause of action.  (*See* DE 1 ¶¶ 17-27.)

---

[3] Plaintiff's motion varyingly refers to amounts of $2,306.09 and $2,306.99.  (*See* DE 19 at 3, 5-6, 9, 13, 14, 15 and 19.)  This report assumes Plaintiff intended to refer only to the amount of $2,306.99.

[4] Presumably, the detriment to which Plaintiff refers is delaying Eunice Gordon's receipt of benefits from May 2013 until April 2014, at which time she was informed about the miscalculation and misrepresentations regarding delaying benefits.  (*See* DE 19 at 14.)  Here, it is worth noting that while Plaintiff claims she

Perhaps more germane to Plaintiff's contractual cause of action is the following instruction from the Supreme Court:  "the summary documents, important as they are, provide communication with beneficiaries *about* the plan, but . . . their statements do not themselves constitute the *terms* of the plan for purposes of § 502(a)(1)(B)."  *CIGNA Corp. v. Amara*, 563 U.S. 421, 438 (2011).  Also, as to an ERISA contract claim, the Sixth Circuit has stated:

> . . . the written Plan documents provide the formula for calculating benefits to which a beneficiary would be entitled depending on whether the beneficiary retired early, on time, or late.  The BEF [benefit election form] signed by [Plaintiff] did not purport to be an amendment or a modification to the Plan.  Nor did it purport to create a separate contract for benefits in addition to those provided by the Plan.  Instead, it simply claimed to provide the actuarially certified benefit [Plaintiff] was entitled to, *based on the Plan.*  Accordingly, the district court was correct to conclude that [Plaintiff] cannot recover benefits under § 1132 of ERISA based on a modification of the Plan or a separate supplemental contract.

*Bloemker v. Laborers' Local 265 Pension Fund*, 605 F.3d 436, 444 (6th Cir. 2010).

Thus, to the extent Plaintiff seeks benefits as set forth in Benefit Express's May 17, 2013 and March 25, 2014 letters, the Court should agree with Defendant that "Benefit Express's letters cannot alter the terms of the pension plan."  (DE 17 at 23-25.)

---

"gave up" her eligibility to receive monthly benefits beginning in May 2013 (DE 19 at 18), it appears that her initial August 1, 2014 payment included compensation retroactive to May 1, 2013 (R. at 28, 49, 54, 75).  Thus, the principal of the debt would appear to have been satisfied.

### D.    Conclusion

Plaintiff's complaint provides a sole cause of action for a violation and declaration of rights under ERISA, which should be reviewed under the deferential "arbitrary and capricious" standard.  As such, there is no need for the Court to separately address Defendant's argument that Count II should be dismissed.  (*See* DE 17 at 25-26.)  The Board of Administration's April 24, 2015 determination was not arbitrary and capricious.  Furthermore, Benefit Express's May 17, 2013 and March 25, 2014 letters do not alter the terms of the Pension Plan.  If the Court agrees with these conclusions, then it need not separately address Defendant's argument that the Estate of Raymond O'Neil Gordon, Sr. "lacks standing and failed to exhaust administrative remedies."  (DE 17 at 26-28.)  Accordingly, the Court should **GRANT** Defendant's motion for judgment on the administrative record (DE 17) and **DENY** Plaintiff's motion for judgment on the administrative record (DE 19).

## IV.    PROCEDURE ON OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health &*

*Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: February 2, 2018              s/Anthony P. Patti
                                     Anthony P. Patti
                                     UNITED STATES MAGISTRATE JUDGE

13

**<u>Certificate of Service</u>**

I hereby certify that a copy of the foregoing document was sent to parties of record on February 2, 2018, electronically and/or by U.S. Mail.

<u>s/Michael Williams</u>
Case Manager for the
Honorable Anthony P. Patti